COOLEY LLP
WHITTY SOMVICHIAN (194463)
wsomvichian@cooley.com
REECE TREVOR (316685)
rtrevor@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

CRISTINA M. FERRUOLO (339442)
cferruolo@cooley.com
10265 Science Center Dr.
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Attorneys for Plaintiff
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GOOGLE LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PROLOY PONDIT, an individual, and DOES 1–20,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Google LLC ("Google"), by and through its attorneys of record, brings this action against Defendants Proloy Pondit and Does 1–20 for (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) breach of contract; and (3) inducement of contractual breach in violation of California law. Google alleges as follows:

**1.** This action seeks to stop Defendants' multinational scheme to sell and post fake reviews for business listings on Google's services such as Google Maps. Working until recently through their website BigBoostUp.com, Defendants claim that they can and will author positive or negative reviews for any business listed on Google Maps, virtually anywhere in the world. Defendants provide these "services" for businesses they have never visited, instead posting fraudulent and misleading reviews for financial gain and at the cost of both businesses and consumers who rely on reviews.

**2.** Defendants also offer to sell and post fraudulent reviews on websites run by other companies, including Amazon.com, Inc. and Amazon.com Services LLC (together, "Amazon"), which operates the Amazon.com store. Amazon is simultaneously bringing a parallel lawsuit against Defendants in the Western District of Washington arising from Defendants' posting of fake reviews on pages for products sold on the Amazon.com store. Amazon and Google are bringing these parallel lawsuits to prevent Defendants from selling and publishing fake reviews and other fake content targeting Google, Amazon, and other legitimate companies and organizations—and the members of the public who those reviews seek to deceive.

**3.** Google Maps provides (among other things) detailed public listings of local businesses with accompanying ratings and reviews submitted by Google Maps users. The authenticity of these reviews is essential to businesses, their customers, and Google. Online ratings and reviews, such as those found on Google Maps, play a crucial role in influencing the decisions of numerous potential customers when they are searching for businesses to engage with. Accordingly, these ratings and reviews must offer genuine, accurate, and truthful information about a company's products and services.

**4.** For these reasons, Google employs numerous methods to prevent and remove fake or otherwise inappropriate reviews on Google Maps. As part of these initiatives, Google has

determined that Defendants are engaged in an ongoing pattern of fraudulent conduct by selling and posting fake reviews for businesses listed on Google Maps, in violation of the parties' contracts and California law.

**5.** Defendants' conduct harms consumers by giving them fake information about businesses and obscuring genuine reviews. Internet users rely on Google Maps and other Google products to compare businesses and decide which merchants to patronize. When a business's reviews do not reflect consumers' real experiences with that business, it provides members of the public with false and inaccurate information about the quality of that business's goods or services. Such fake reviews also crowd out reports of real consumers' interactions with a business, potentially turning a string of genuine negative reviews that might cause prospective patrons to go elsewhere into apparent outliers. Defendants' conduct likewise harms legitimate businesses by enabling unscrupulous competitors who purchase Defendants' false and misleading reviews to unfairly siphon customers away from law-abiding firms.

**6.** Finally, Defendants' conduct poses a risk of irreparable injury to Google by undermining its credibility with Google Maps users and threatening to make Google Maps less attractive for consumers seeking information about local products and services—and for businesses that would otherwise rely on Google to publicize their services to potential patrons. Google brings this action to put an end to Defendants' fraudulent conduct and the ongoing harm Defendants are causing to Google, Google users, and business owners.

## PARTIES

**7.** Google LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

**8.** Google is informed and believes, and on that basis alleges, Defendant Proloy Pondit is an individual who currently resides in Bangladesh, where he has resided at all relevant times. Google is informed and believes, and on that basis alleges, that Pondit is associated with and/or controls BigBoostUp.com, a website through which he and some or all of the Doe Defendants sold fake Google reviews between at least October 2023 and September 2024. Among other indicia, the

order form for fake Google reviews on BigBoostUp.com provided Pondit's information for payment and listed "Proloy Pondit" as the beneficiary for payment.

**9.** Pondit's LinkedIn Profile claims he is a "digital marketing specialist" and offers "Google Ads Campaign" as one of his "[s]ervice[s]." The hashtag #googlemarketer appears elsewhere on the profile page.

**10.** Google does not know the true names and capacities of those defendants sued as Does 1–20 (the "Doe Defendants") and therefore sues them under fictitious names. On information and belief, some or all of the Doe Defendants are individuals or entities that post fraudulent reviews using Google products at the direction of other Defendants. Google will amend this Complaint to allege the true names and capacities of these Doe Defendants if and when they are ascertained.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

**11.** This Court has diversity jurisdiction under 28 U.S.C. § 1332, as (1) the parties on each side of the case are citizens of different nations and (2) the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs, including Google's expenses incurred to investigate Defendants conduct, and the damage to Google's goodwill resulting from Defendants damage to user's confidence and trust in Google's services.

**12.** This Court has personal jurisdiction over Defendants because each Defendant consented to the jurisdiction of the federal or state courts of Santa Clara County, California, by

agreeing to Google's Terms of Service and the choice of venue provision therein, as discussed in more detail below.

**13.** Venue is proper in this District under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this District, including the harm that Defendants caused Google and other individuals and entities in this District. In addition, Defendants consented to venue in this District by agreeing to Google's Terms of Service and the choice of venue provision therein, as discussed in more detail below.

**14.** This action is properly assigned to the San Jose Division of this District under Civil Local Rule 3-2(c) because Plaintiff Google is headquartered in Santa Clara County, which is served by the San Jose Division.

## FACTUAL BACKGROUND

### GOOGLE MAPS & REVIEWS

**15.** Google is a well-known provider of an Internet search engine and other online services. One such service is Google Maps, which is free to use and has over one billion monthly active users. Google Maps displays not only traditional map features like streets and topography, but also clickable profile pages detailing information about businesses, service providers, and other places of interest. These pages, known as "local listings," span an enormous variety of businesses and professionals around the United States and the world. These include, just to name a few, restaurants, car mechanics, accountants, museums, dentists, hair salons, airports, law firms, government agencies, retail stores, and amusement parks. Local listings are search results that appear on Google products, like the Google Maps mobile application and in Google search. New local listings may be created by businesses themselves, automatically created by Google, or suggested by members of the public.

**16.** Businesses can sign up for a Business Profile, a Google service that offers them a suite of tools to manage their business's local listing on Google. To create a new Business Profile or claim an existing local listing as a Business Profile, a user must accept both Google's Terms of Service and the Google Business Profile Additional Terms of Service for Business Entities ("Google Business Profile TOS").

**17.** Internet users can browse Google Maps or Google search to explore local listings in a given area and run searches to find a particular business or type of business near a specific location. These listings display certain information about a business, including its street address, hours, and website. For example, the local listing for the Googleplex, Google's campus in Mountain View, California, appears below:

**18.** Importantly for this case, local listings also feature user-created ratings and reviews of the business associated with each listing. To be useful to consumers, these reviews must be based on authentic experiences with the business.

**19.** Anyone browsing the Internet can view local listings and reviews, but a user must create and log into a free Google account in order to post a review on a local listing. Signed-in Google users may award a business between one and five stars, and they can also post a narrative description of their experiences with the business. Once a user creates a review, that review is visible publicly on the business's local listing, along with the user's name and profile picture. The local listing also displays the business's average star review on its main local listing page. In the example above, for instance, the Googleplex's local listing reflects 9,903 reviews, averaging 4.2 out of 5 stars.

**20.** Particularly because these averaged review scores often appear on Google Maps and in other Google services before a user even clicks on the associated local listing, they can provide

an important tool for consumers to identify the best-regarded business of a particular type in a particular area. Consider, for example, the below search in Google Maps for "San Francisco landmarks," which illustrates how a user looking for a particular type of establishment might compare different businesses based on the star reviews in their local listings.

San Francisco landmarks

PIER 39
4.6 ★★★★★ (124,777)
Historical landmark · The Embarcadero
Scenic pier with food & activities
Open · Closes 10 PM
Onsite services

San Francisco Maritime National Historical Park
4.6 ★★★★★ (4,926)
Historical place
Exhibits on the oceangoing experience
Open 24 hours
Onsite services

Golden Gate Bridge
4.8 ★★★★★ (77,338)
Bridge · Golden Gate Brg
Iconic art deco span opened in 1937
"... and every traffic jam was worth it to see this historic landmark."

Coit Tower
4.5 ★★★★★ (13,886)
Historical landmark · 1 Telegraph Hill Blvd
Landmark offering 360-degree city views
Closed · Opens 10 AM Fri
Onsite services

Alcatraz Island
4.7 ★★★★★ (40,025)
Historical place

**21.** Reviews on Google Maps are critically important to users, businesses, and Google. Users rely on reviews to make informed decisions about which businesses to patronize (or not). Businesses, in turn, stand to gain when happy customers post positive reviews that direct new customers their way. Google, for its part, benefits from maintaining a helpful service that users will

turn to for accurate, trustworthy information.

**22.** By contrast, when reviews are fake or misleading, everyone involved suffers. Users are left with inaccurate information. Businesses with legitimate reviews lose revenue to those with illegitimate ones. And Google loses credibility and goodwill among misled users and frustrated businesses, making both less likely to turn to Google products in the future.

**DEFENDANTS' SALE OF FAKE REVIEWS**

**23.** Defendants seek to exploit customers' reliance on reviews when making important decisions about which businesses to patronize—and businesses' related desire for positive reviews—for their own financial gain. For a fee, Defendants will generate for *any* business – regardless of quality – glowing reviews, posted on that business's Business Profile by a purportedly "satisfied" customer. Google is informed and believes, and on that basis alleges, that a substantial proportion—if not all—of Defendants' reviews are fraudulent, written by users who have *never* visited, patronized, or otherwise experienced the business they are reviewing and posted to deceive customers and manipulate Google search results.

**24.** BigBoostUp's website advertised its services as a "digital marketing promoter and booster" to "[b]oost and promote your business in [the] online marketplace."[1] It directed customers to a webpage where they could "[b]uy Google reviews to improve any of your businesses."

**25.** BigBoostUp touted that customers should purchase its "Google 5 star reviews" and "Google reviews" to "increase trust and credibility in the eyes of potential customers and [] give you an edge over your competition. They can also help you get to the top of Google search results and even lead to customer referrals."

**26.** BigBoostUp offered a variety of packages of Google reviews, where customers could buy between 5 and 300 reviews.

[1] BigBoostUp's website is no longer publicly accessible as of late September 2024, but Google is informed and believes that Defendants are continuing to advertise, sell, and post fake reviews on Google services through other channels.

**27.** Customers could also purchase five-star reviews (the highest possible rating) from BigBoostUp for an additional fee.

**28.** BigBoostUp's website was replete with assurances that its Google reviews would give buyers "increased visibility" and "attract[] potential customers."

**29.** Some merchants who purchased Defendants' fake reviews were likely drawn to BigBoostUp's promises to "quickly increase your business reputation and spread the word about the quality of your offers . . . which is especially important if you've recently started a business and are trying to get more customers to write reviews."



**30.** Elsewhere on the BigBoostUp website, in smaller chunks of narrative text, Defendants revealed that they know fake reviews are prohibited on Google's services. The BigBoostUp website boasted that Defendants "work hard to keep reviews" seemingly "organic"–that is, posted by real people based on real experiences–to "avoid any suspicious activity that might cause concern."

**31.** Based on those representations and its investigation, Google is informed and believes, and on that basis alleges, that Defendants either write fake reviews themselves; directly employ individuals to write fake reviews; or arrange for third parties, including some or all of the Doe Defendants, to do so in exchange for compensation.

**32.** Defendants' exact practices for posting reviews are unclear, which makes it difficult for Google to determine the relationship between Defendants and their reviewers at this stage. Google will update its complaint to describe the specific methods used by the defendants to obtain fake reviews, as appropriate, after appropriate discovery in this action.

**33.** Even without discovery, however, on information and belief, there are over one thousand fake reviews posted by Google accounts affiliated with BigBoostUp.

**34.** One account ("Account A") that Google is informed and believes, based on its investigation, to be affiliated with BigBoostUp and Pondit, posted reviews for ten different businesses across the United States over a span of only five days.

**35.** On February 1, 2023, for instance, Account A posted reviews for two separate hair salons in Florida. The first, for "Botox Conditioning Treatment Hair Salon," stated:

> Botox Conditioning Treatment Hair Salon is a salon with salon-like quality and prices that are never too high. Each individual strand is carefully blow-dried and balayage enhanced to the fullest, hugest extent. The stylists who work there deliver high level service for prices that will make any salon reviewer jealous! I give them 10 stars!

The second, for "Hair Botox Treatment Salon Brickell - Botox Specialist" claimed:

> There's no place like Hair Botox Treatment Salon Brickell. The service is amazing, I love the hair stylist Viktoria, she pays attention to details and the needs of my hair. I love the manager, he's always helpful and involved. I absolutely love Hair Botox Treatment Salon Brickell."

**36.** On February 5, 2023, Account A posted reviews for multiple home service companies across multiple countries. These included "Red Deer Landscaping & Design" in Alberta, Canada, where the review claimed the company "add[ed] a retaining wall for us this past summer," and "Water Damage Cleanup Suffolk County" in New York, where the review claimed the company fixed a "broken water pipe."

**37.** That same day, Account A also posted a review for "Depression And Trauma Therapy" in California, implying that the user lived near the business in California when the review claimed it was "[t]he best mental health clinic near me" and for "Best Psychic Houston," claiming that the company had "squeezed [them] in for a last minute best tarot card reading."

**38.** On information and belief, Google alleges that the reviews identified above were posted by users acting on behalf of Defendants.

**39.** Another account ("Account B") that Google is informed and believes is affiliated with Defendants similarly posted glowing reviews for businesses across the country over a span of six days.

**40.** On January 24, 2023, Account B wrote five-star reviews for two separate air duct cleaning in services, one in Connecticut and one in New Jersey; two separate water damage restoration companies in Long Island; a New York translation service; a carpet cleaner in Canada; and a what appeared to be a pre-owned jewelry store in New York called "Sell Cartier NYC," where the account wrote about a watch purchase.

**41.** According to the reviews, the poster behind Account B received services from all seven businesses, including at the user's home by two separate water damage companies:

- For Water Damage Long Island, the account wrote, "Had a foundation crack in our home that led to some water damage in our basement.  After we had the crack fixed, we called the water damage restoration people and they got rid of the remaining water, the stains, and the smells. . ."; and

- For Water Damage Restoration Long Island, the account similarly wrote about the service it received: "Our teenage daughter took a phone call while she was filling the bathtub and then forgot that she was filling the bathtub.  The damage had been done before she discovered the problem.  Water Damage Restoration to the rescue.  They cleaned up everything.  Hoping my daughter doesn't get any more phone calls when she is filling the tub."

**42.**     The next day, Account B wrote a review for "Sell Richard Mille NYC," where the author wrote about a second luxury watch purchase and stated, "I'll be using this watch store for any future purchases."

**43.**     Two days later, on January 27, 2023, Account B wrote a review for "Sell Patek Philippe NYC," writing that it was "[s]imply the best watch store in the city. . .  They have consistently provided me with great advice and went out of their way to service my watches. I'm a repeat customer and am thrilled to keep coming back."

**44.**     That same day, Account B posted a review for a mold remediation company in Jacksonville, Florida, about the services its user supposedly received for a "mold issue" and a psychic in New York, NY, where the account claimed: "I've had a few readings here, and they are all incredible. It's crucial that Valeria be kind, reassuring, and authentic because hearing from your loved ones might be difficult. Today's reading was enlightening and just what I needed at this point in my really difficult situation. She provides precisely what you need at the right time, which is great. Do not hesitate, call Psychic!"

**45.**     Two days later, on January 29, 2023, Account B wrote reviews for two more psychics, one in Kansas City and one in Detroit, writing in one review that, despite allegedly seeing a psychic only two days prior, "I felt like I was starting to lose a bit of myself and wanted to see if a card reading could help with that," and in the other review that, "[t]he reading I received from Psychic Detroit was accurate and right on the nose. I could not have imagined facing the situation prior to getting the guidance I received."

**46.**     The same day, this Account B also posted reviews for a car company in Philadelphia, another water damage restoration company in Hempstead, NY, and a "Cash for Gold" business in

New York. And the following day, the account posted a review for hair extensions in Miami.

**47.** Taken together, these accounts and their reviews have all the signs of fake online engagement. It is highly implausible, for instance, that these individuals in fact patronized multiple home improvement businesses providing services in locations across North America. It is equally suspicious that a single user is a genuine repeat customer of multiple businesses whose names are the words "Sell" and "NYC" with the name of a luxury watch brand in between—or that they needed the services of three psychics, two water damage repair services, a car company, and a gold buyer in six different cities in just three days.

**GOOGLE'S TERMS OF SERVICE**

**48.** Google makes clear to all users that there are specific rules for user-contributed content, such as reviews on Google Maps. Most importantly, in this case, Google's contract with its users mandates that the reviews must be genuine and should accurately represent a user's real experience with a business.

**49.** When a user signs up for a Google account—a prerequisite for using the Business Profile service and for posting reviews on Google Maps—he or she must expressly agree to the Google Terms of Service ("TOS").[2]

**50.** The TOS govern users' relationship with Google, permitting them to use Google's services in exchange for following certain rules and guidelines. The TOS incorporate by reference various "service-specific additional terms" that apply to individual Google products, including Maps, such as the Maps User Contributed Content Policy.

**51.** At all relevant times, the TOS and the Maps User Contributed Content Policy have included requirements for "Maps user contributed content to help ensure everyone viewing user generated content has a positive, beneficial experience." They provide that contributions must be "***based on real experiences and information***," and they prohibit "[d]eliberately fake content" and "incorrect content." These policies reflect that Google "go[es] to great lengths to make sure content published by third-party contributors is useful and reflects the world [its] users explore."[3]

---

[2] https://policies.google.com/terms?hl=en-US.
[3] https://support.google.com/contributionpolicy/answer/7422880?hl=en.

**52.** Defendants breached the TOS by posting or inducing third parties (including without limitation some or all of the Doe Defendants) to post deliberately fake content, not based on real experiences and information, on Google Maps.

**53.** The Maps User Contributed Content Policy also requires merchants to adhere to certain guidelines in representing their businesses on Google Business Profiles. It specifically provides that Google does not allow businesses to "[s]olicit or encourage the posting of content that does not represent a genuine experience." Google also prohibits merchants from "[o]ffer[ing] incentives – such as payment, discounts, free goods and/or services – in exchange for posting any review or revision or removal of a negative review." Google Business Profile users who purchase Defendants' fake reviews violate this policy, since they both "[s]olicit" the fake reviews and offer "payment" for them. These merchants therefore breach the TOS to which they agreed when they created the Google accounts necessary to use Google Business Profiles.

**54.** The Google Business Profile TOS incorporate a set of service-specific Business Profile Policies & Guidelines,[4] which require that "[a]ll content added to a Business Profile must abide by Google's Prohibited and restricted content policies"[5] set forth in the Maps User Generated Content Policy. Any Google Business Profile user who breaches the TOS by violating the Maps User Generated Content Policy therefore necessarily breaches the Google Business Profile TOS too.

**55.** Google is informed and believes, and on that basis alleges, that Defendants know and knew during all relevant times that the TOS apply to the relationship between Google and users who post reviews and operate Google Business Profiles. Because Defendants' business involves posting reviews on Google and elsewhere, it follows that they must be aware that a user account is required to do so or to administer a Business Profile, and that one must accept the TOS to create such an account. In fact, Defendants admit as much. BigBoostUp freely acknowledged on its website that one of the "risks" in buying reviews on Google is that "***it violates Google's policies***."[6]

---

[4] https://support.google.com/business/answer/7667250.
[5] https://support.google.com/business/answer/13762416?sjid=4505110269987471185-NA.
[6] https://www.bigboostup.com/product/buy-google-business-review/ (emphasis added).

**COUNT I: VIOLATION OF CAL. BUS. & PROF. CODE § 17200**
***(Against All Defendants)***

**56.** Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**57.** Defendants' sale and authorship of fake Google reviews is contrary to the Federal Trade Commission ("FTC")'s regulations governing the use of endorsements and testimonials. Those rules require that endorsements "reflect the honest opinions, findings, beliefs, or experience of the endorser" and prohibit "any express or implied representation that would be deceptive if made directly by the advertiser." 16 C.F.R. § 255.1(a). Defendants violate this provision by posting reviews of businesses they have never patronized and whose products and services they have never experienced, all while falsely and deceptively implying to readers that they have.

**58.** Violation of FTC regulations is an unlawful business practice under California's UCL, Cal. Civ. Code § 17200.

**59.** Defendants' unlawful business practices have directly resulted in economic harm to Google, including the costs of Google's investigation into those practices and the impact on Google's credibility, goodwill, and user experience.

**60.** Absent an injunction prohibiting these unlawful business practices, Defendants are likely to continue posting fake reviews in violation of FTC regulations and the UCL, including by creating or using new and different Google accounts and public-facing websites to evade Google's attempts to detect and prohibit Defendants' fake reviews. Google faces irreparable harm from the ongoing impact of such fake reviews on Google's credibility, goodwill, and user experience.

**COUNT II: BREACH OF CONTRACT**
***(Against All Defendants)***

**61.** Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**62.** To the extent Defendants themselves posted fake content on Google, Defendants entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS, as set forth above.

**63.** Google has fully performed its obligations under these TOS.

**64.** Defendants breached their contractual obligations under the TOS in a number of ways, including by posting on Google Maps deliberately fake content that was not based on real experiences.

**65.** As set forth above, as a result of Defendants' breach of the TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate and remedy Defendants' breach and by undermining users' confidence and trust in Google services including Google Maps and local listings on Google.

**COUNT III: INDUCEMENT OF CONTRACTUAL BREACH BY REVIEWERS**
***(Against all Defendants)***

**66.** Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**67.** To the extent Defendants, including without limitation some or all of the Doe Defendants, induce others to post fake content on Google, Defendants induced such individuals to breach a valid contract with Google.

**68.** Individuals who posted content on Google on the instruction of Defendants entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS, as set forth above.

**69.** Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that only users who had agreed to the TOS and signed into their Google accounts could post reviews on Google, and thus that binding and enforceable contracts existed between Google and the individuals they enlisted to post fake reviews on Google.

**70.** Google is informed and believes, and on that basis alleges, that Defendants intentionally induced and enabled these third parties to create fake reviews on Google Maps, as set forth above, for Defendants' own monetary gain.

**71.** Google is informed and believes, and on that basis alleges, that these individuals breached their contractual obligations under the TOS in a number of ways, including by posting on Google Maps deliberately fake content that was not based on real experiences as a result of

Defendants' inducement.

**72.** Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that the TOS prohibited posting fake content on Google, and thus that violation of the TOS was a necessary consequence of their inducing these individuals to create fake reviews on Google Maps, as set forth above.

**73.** As set forth above, as a result of these individuals' breaches of the TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate those breaches and by undermining users' confidence and trust in Google services including Google Maps, Google Business Profiles, and local listings.

**COUNT IV: INDUCEMENT OF CONTRACTUAL BREACH BY BUSINESSES**
***(Against all Defendants)***

**74.** Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**75.** To the extent Defendants, including without limitation some or all of the Doe Defendants, induced business owners that use Google Business Profiles to purchase fake reviews for their businesses, Defendants induced such businesses to breach a valid contract with Google.

**76.** Businesses with active Google Business Profiles entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS and Google Business Profile TOS, as set forth above.

**77.** To the extent those businesses with active Google Business Profiles purchased fake reviews from Defendants, those Defendants violated Google's TOS and Google Business Profile TOS.

**78.** Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that businesses that had claimed their Business Profile had agreed to Google's TOS and Google Business Profile TOS, and thus that binding and enforceable contracts existed between Google and the business.

**79.** Google is informed and believes, and on that basis alleges, that Defendants intentionally induced and enabled these businesses to violate the TOS and Google Business Profile

TOS for Defendants' own monetary gain.

**80.** Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that the TOS and Google Business Profile TOS prohibited posting fake content on Google, and thus that violation of the TOS was a necessary consequence of their actions.

**81.** As set forth above, as a result of these individuals' breaches of the TOS and Google Business Profile TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate those breaches and by undermining users' confidence and trust in Google services including Google Maps and Google Business Profiles.

**PRAYER FOR RELIEF**

**WHEREFORE,** Google respectfully requests the following relief:

**1.** That Defendants are adjudged to have engaged in unlawful business acts or practices in violation of California's Unfair Competition Law;

**2.** That Defendants are adjudged to have breached Google's TOS;

**3.** That Defendants are adjudged to have induced various other individual Google users to breach Google's TOS and Google Business Profile TOS;

**4.** That Defendants be permanently enjoined from advertising or posting fake Google reviews not based on a user's actual experience of the associated business's goods or services;

**5.** That Google be awarded damages in an amount sufficient to compensate it for damages caused by Defendants' acts;

**6.** That Google be granted such further relief as the Court may deem just and equitable; and

**7.** That Google be granted a jury trial on all claims where such a right is afforded.

Dated: October 28, 2024

COOLEY LLP
WHITTY SOMVICHIAN
REECE TREVOR
CRISTINA FERRUOLO

By: */s/ Whitty Somvichian*
Whitty Somvichian

Attorneys for Plaintiff
GOOGLE LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

COMPLAINT